FILED
2021 Nov-30  AM 09:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**CHRISTOPHER MARCZEWSKA,**

    **PLAINTIFF,**

**VS.**                        **CV NO.:**

**HRH METALS, INC.,**

    **DEFENDANT.**            **JURY TRIAL DEMANDED**

## COMPLAINT

### I. JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. District Court jurisdiction exists pursuant to 29 U.S.C. §§ 206, 216(b) and 217 and 28 U.S.C. § 1331. The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA and specifically the rights secured by the Equal Pay Act.

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 2000e *et seq*. This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, *et seq*. (Title VII). The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by Title VII providing for

injunctive and other relief caused by sex, national origin, and religious discrimination, as well as retaliation for opposing discriminatory practices.

3.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).  Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II. PARTIES

4.      Plaintiff, Christopher Marczewska, (hereinafter "Plaintiff") is a resident of Moody, St. Clair County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case.  Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Middle Division.

5.      Defendant HRH Metals Inc., (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331, 29 U.S.C. § 201, *et seq.,* and 42 U.S.C. § 2000e *et seq*.  Defendant employed at least fifteen (15) persons during the current or preceding calendar year.  Therefore, this Court has personal jurisdiction over Defendant.

## III. STATEMENT OF FACTS

6.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 5 above.

7.     Plaintiff is a male.

8.     Plaintiff is a practicing member of the Catholic church.

9.     Plaintiff is of German descent.

10.    Defendant hired Plaintiff on or about November 26, 2018.

11.    Defendant employed Plaintiff as an Office Associate and Scale House Attendant.

12.    Defendant last paid Plaintiff $18.00 per hour.

13.    Defendant employed Karen Isbell.

14.    Isbell is a female.

15.    Defendant employed Isbell as a Receptionist.

16.    Defendant paid Isbell on a salary basis with a rate of pay which exceeded Plaintiff's weekly pay.

17.    Defendant employed Tina England.

18.    England is a female.

19.    Defendant employed England as an Office Associate.

20.    Defendant paid England on a salary basis with a rate of pay which exceeded Plaintiff's weekly pay.

21.    Isbell, England, and Plaintiff performed the identical duties of answering and directing Defendant's telephone calls, communicating with customers, ordering supplies, inputting dispatches, and filing paperwork.

22.    Plaintiff also performed additional duties related to the Scale and dispatching and directing Defendant's truck drivers.

23.    Defendant employed Paul Pyles.

24.    Defendant employed Pyles as Plaintiff's direct supervisor.

25.    Defendant's handbook states that "Any company employee who feels that he or she has been harassed or discriminated against . . . should bring the matter to the immediate attention of his or her supervisor or to Paul Pyles.

26.    During November of 2019, Plaintiff complained to Pyles that Defendant paid Plaintiff less money than Isbell and England.

27.    When Plaintiff complained to Pyles about receiving less pay, Pyles sent Plaintiff home for the remainder of the day without pay.

28.    Plaintiff later told Pyles that if Defendant was unwilling to pay Plaintiff the same rate that Isbell and England were paid, then Plaintiff would prefer to go back to work in "The Yard" under Pyles and have Defendant find a replacement for the office position.

29.    Following Plaintiff's complaint to Pyles regarding unequal pay, Pyles began using derogatory, offensive, and abusive language towards Plaintiff.

30.     Pyles was aware that Plaintiff is a practicing member of the Catholic Church.

31.     Pyles frequently ridiculed Plaintiff due to his religion.

32.     During Plaintiff's employment, Pyles regularly made the comment, "Catholics are idiots if they believe that they have to go to a priest for Confession."

33.     During Plaintiff's employment, Pyles regularly stated that all Catholic priests are child molesters.

34.     During Plaintiff's employment, Pyles learned that Plaintiff had been an altar boy for the Catholic Church.

35.     After learning that Plaintiff had been an altar boy for the Catholic Church, Pyles began stating that Plaintiff had been molested by a priest.

36.     Pyles was aware that Plaintiff was of German descent.

37.     Throughout Plaintiff's employment, Pyles had Plaintiff's contact information stored in his company provided cellular telephone as "Chris the German."

38.     In a discussion where Plaintiff told Pyles about being bullied in school, Pyles stated that no one attempted to bully Plaintiff but that they were probably just afraid of Plaintiff.

39.     Plaintiff asked Pyles why people would be afraid of him and Pyles responded "You know, for what you guys did in World War II."

40.    When speaking to Plaintiff, Pyles often referenced the Nazis and the atrocities committed during World War II.

41.    Pyles often stated that Plaintiff's "people", referring to Catholics and Germans (that were members of the Nazi Party), colluded with each other after World War II to allow the Nazis to escape and not answer for the crimes against humanity that occurred during World War II.

42.    Pyles frequently stated that Plaintiff should not make mistakes because Germans are known for their precise work

43.    On multiple occasions, Plaintiff requested a meeting with Pyles through Defendant's open-door policy.

44.    Pyles responded by stating that the open-door policy was not real and if Plaintiff even thought about filing a complaint against Pyles or Defendant "it will not end well for [Plaintiff]."

45.    Pyles had previously made threatening remarks regarding another employee, Walter Collins, (nicknamed "Hammer") by stating "If I catch hammer on it[sic] we will be using it to dig his grave!!!"

46.    Defendant's owners are Ed Robinson, Kevin Trimm, and Steve Crawford.

47.    Plaintiff informed Trimm of the need to speak with him regarding Pyles' behavior.

48.     Trimm responded by stating that "I know how [Pyles] is and how he can be.  I'll let you know when I have time to talk to you."

49.     Trimm never discussed Pyles behavior with Plaintiff.

50.     On December 3, 2020, Pyles telephoned Plaintiff about an error that occurred in the workplace.

51.     Pyles used offensive and abusive language during the telephone call.

52.     During the telephone call, Plaintiff twice asked Pyles to stop speaking to him in that manner.

53.     Pyles persisted to use offensive and abusive language.

54.     In response, Plaintiff ended the call.

55.     Pyles then telephoned Cary Davis.

56.     Pyles instructed Davis to suspend Plaintiff's employment.

57.     Davis suspended Plaintiff's employment for December 4, 5, and 6, 2020.

58.     On December 7, 2020, Plaintiff submitted a written complaint to Robinson, Trimm and Crawford regarding discriminatory pay practices based on sex and regarding the hostile work environment created by Pyles.

59.     Plaintiff included in this complaint his statement regarding the incident that occurred on December 3, 2020.

60.    Pyles later contacted Plaintiff via text message and informed Plaintiff that they were going to have a meeting.

61.    On December 10, 2020, Defendant terminated Plaintiff's employment.

62.    Defendant did not state a reason for Plaintiff's termination.

## IV.  COUNT ONE – 29 U.S.C. § 206 – EQUAL PAY CLAIM

63.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1, and paragraphs 4 through 62 above.

64.    During the three years preceding the filing of this Complaint, Defendant is an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. 203(s)(1).

65.    During the three years preceding the filing of this Complaint, Defendant has been a company wherein two or more employees, including the Plaintiff, are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce.

66.    Defendant's gross annual volume of revenue, on a rolling quarterly basis, exceeds $500,000 for the years of 2018, 2019, 2020, and 2021.

67.    At all times relevant to this action, Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

68.    Plaintiff is a male.

69.    Defendant hired Plaintiff on or about November 26, 2018.

70.     Defendant employed Plaintiff as an Office Associate and Scale House Attendant.

71.     During the three years preceding the filing of this Complaint, Plaintiff was an employee of Defendant as defined by 29 U.S.C. § 203(e)(1).

72.     At all times relevant to this action, Defendant was an employer of Isbell as defined by 29 U.S.C. § 203(d).

73.     Isbell is a female.

74.     Defendant employed Isbell as a Receptionist.

75.     During the three years preceding the filing of this Complaint, Isbell was an employee of Defendant as defined by 29 U.S.C. § 203(e)(1).

76.     At all times relevant to this action, Defendant was an employer of England as defined by 29 U.S.C. § 203(d).

77.     England is a female.

78.     Defendant employed England as an Office Associate.

79.     During the three years preceding the filing of this Complaint, England was an employee of Defendant as defined by 29 U.S.C. § 203(e)(1).

80.     Defendant last paid Plaintiff $18.00 per hour.

81.     Defendant paid Isbell and England on a salary basis with the rate of pay which exceeded Plaintiff's weekly pay.

82.    Isbell, England, and Plaintiff performed the identical duties of answering and directing Defendant's telephone calls, communicating with customers, ordering supplies, inputting dispatches, and filing paperwork.

83.    Plaintiff also performed additional duties related to the Scale and dispatching and directing Defendant's truck drivers.

84.    Defendant does not use a seniority system when setting pay rates for its employees.

85.    Defendant does not use a merit system when setting pay rates for its employees.

86.    Defendant does not use a system measuring earnings by quantity or quality when setting pay rates for its employees.

87.    Defendant's decision to pay Plaintiff, a male, a lesser wage than Isbell and England, both females, for performing the same job with the same duties and responsibilities is a violation of the Equal Pay Act.

88.    As a result of Defendant's willful violation of the Equal Pay Act, Plaintiff has been damaged, suffering loss of pay and benefits.

## V.  COUNT TWO – Retaliation – FLSA

89.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 and paragraphs 4 through 88 above.

90.     When Plaintiff complained to Pyles about receiving less pay, Pyles sent Plaintiff home for the remainder of the day without pay.

91.     Plaintiff later told Pyles that if Defendant was unwilling to pay Plaintiff the same rate that Isbell and England were paid, then Plaintiff would prefer to go back to work in "The Yard" under Pyles and have Defendant find a replacement for the office position.

92.     Following Plaintiff's complaint to Pyles regarding unequal pay, Pyles began making derogatory comments towards Plaintiff.

93.     Following Plaintiff's complaint to Pyles regarding unequal pay, Pyles began using offensive and abusive language towards Plaintiff.

94.     Plaintiff requested a meeting with Pyles through Defendant's open-door policy several times.

95.     Pyles responded by stating that the open-door policy was not real and if Plaintiff even thought about filing a complaint against Pyles or Defendant "it will not end well for [Plaintiff]."

96.     Pyles had previously made threatening remarks regarding another employee, Walter Collins, (nicknamed "Hammer") by stating "If I catch hammer on it[sic] we will be using it to dig his grave!!!"

97.     Defendant's owners are Ed Robinson, Kevin Trimm, and Steve Crawford.

98.   Plaintiff informed Trimm of the need to speak with him regarding Pyles' behavior.

99.   On December 7, 2020, Plaintiff submitted a written complaint to Robinson, Trimm and Crawford regarding discriminatory pay practices based on sex and regarding the hostile work environment created by Pyles.

100.   Pyles later contacted Plaintiff via text message and informed Plaintiff that they were going to have a meeting on December 10, 2020.

101.   On December 10, 2020, Defendant terminated Plaintiff's employment.

102.   Defendant did not state a reason for Plaintiff's termination.

103.   Pyles retaliated against Plaintiff when Pyles began using derogatory, offensive, and abusive language towards Plaintiff after Plaintiff complained about Defendant's unequal pay.

104.   In violation of 29 U.S.C. § 206, Defendant terminated Plaintiff's employment in retaliation for his complaint regarding discriminatory pay practices based on sex and regarding the hostile work environment created by Pyles.

105.   But for Plaintiff's complaint regarding discriminatory pay practices based on sex and regarding the hostile work environment created by Pyles, Defendant would not have terminated Plaintiff's employment.

106.   As a result of Defendant's violation of the Equal Pay Act, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VI.  COUNT THREE – Title VII – Discriminatory Pay Practices

107.   Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 2 through 62 and paragraphs 64 through 86 above.

108.   In violation of Title VII, Defendant's decision to pay Plaintiff, a male, a lesser salary than Isbell and England, both females, for performing the same job with the same duties and responsibilities was based, in whole or in part, because of Plaintiff's sex.

109.   As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

## VII.  COUNT FOUR – Title VII – Hostile Work Environment (Religion & National Origin)

110.   Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 2 through 62 above.

111.   In violation of Title VII, Defendant subjected Plaintiff to a discriminatory hostile work environment resulting in a tangible adverse job action.

112.   As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, mental anguish.

## VIII.  COUNT FIVE – Title VII – Retaliation

113.   Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 2 through 62, 108-109, and 111-112 above.

114.   On December 7, 2020, Plaintiff submitted a written complaint to Robinson, Trimm and Crawford regarding discriminatory pay practices based on sex and regarding the hostile work environment created by Pyles.

115.   Plaintiff included in this complaint his statement regarding the incident that occurred on December 3, 2020.

116.   On December 10, 2020, Defendant terminated Plaintiff's employment.

117.   Defendant did not state a reason for Plaintiff's termination.

118.   In violation of Title VII, Defendant terminated Plaintiff's employment in retaliation for his complaint regarding discriminatory pay practices based on sex and regarding the hostile work environment created by Pyles.

119.   But for Plaintiff's complaint regarding discriminatory pay practices based on sex and regarding the hostile work environment created by Pyles, Defendant would not have terminated Plaintiff's employment.

120.   As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, mental anguish.

## IX.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.   Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the

Defendant and at the Defendant's request from continuing to violate the terms of the Title VII of the Civil Rights Act of 1964;

B.     Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

C.     Award him back pay, together with employment benefits, front pay, liquidated damages; special damages; nominal damages;

D.     Attorneys' fees and costs;

E.     Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 2000e that the actions of Defendant violated the law; and,

F.     Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
Allen D. Arnold

**OF COUNSEL:**

ALLEN D. ARNOLD, Attorney at Law
6 Office Park Circle, Suite 209
Birmingham, AL 35223
T: (205) 252-1550
ada@allenarnoldlaw.com

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**DEFENDANT'S ADDRESS:**
HRH Metals Inc.
c/o Ed Robinson
905 Markeeta Spur Road
Moody, AL 35004